IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **AEROSPACE TURBINE ROTABLES, INC.,**<br><br>**Plaintiff,**<br><br>v.<br><br>**818 AVIATION, INC.,**<br><br>**Defendant.** | Case No. 22-1005-DDC-RES |

### MEMORANDUM AND ORDER

Plaintiff Aerospace Turbine Rotables, Inc. and defendant 818 Aviation, Inc. had a mostly successful eight-year business relationship. Defendant shipped aircraft parts to plaintiff in Kansas. Plaintiff then evaluated, overhauled, and repaired the parts. But then, in 2021, the relationship soured. Defendant demanded plaintiff return parts to defendant in California. Plaintiff demanded payment. Eventually, each party sued the other. Defendant filed first, commencing in November 2021 an action in the United States District Court for the Central District of California. Plaintiff filed this action here in Kansas about two months later.

Now, defendant has filed a motion asking the court to dismiss this case without prejudice, transfer it to California, or stay the case.[1] Doc. 8. This request follows form with an earlier motion in the California case. Plaintiff here—defendant in California—asked that court to

---

[1] Defendant calls its motion a Motion to Dismiss or Transfer. *See* Doc. 8. But defendant also acknowledges that the court has discretion to stay this action. *See* Doc. 9 at 14. Indeed, in its Reply, defendant's position has evolved to the point that it asks the court to stay this case pending the California court's ruling on plaintiff's Motion to Dismiss pending in that court. *See* Doc. 16 at 7. The court thus construes defendant's motion as a Motion to Dismiss, Transfer, or Stay.

dismiss or transfer that case in favor of proceeding with this Kansas case. The California court recently denied that motion. *See* Doc. 17-1 (attaching Order Denying Def.'s Mot. To Dismiss, *818 Aviation, Inc. v. Aetr Rotables, Inc.*, No. 2:21-cv-08894- MEMF (RAOx) (C.D. Cal. Aug. 15, 2022), ECF No. 30).

Principles of comity and judicial efficiency persuade the court to grant defendant's motion. Specifically, the court transfers the case to the United States District Court for the Central District of California because defendant first filed a similar action there. The court explains its reasoning, below.

**I.      Background**

The court accepts plaintiff's "well-pleaded facts as true, view[s] them in the light most favorable to [it], and draw[s] all reasonable inferences from the facts" in its favor. *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021).

Plaintiff is a Delaware corporation with its principal place of business in Kansas. Doc. 5 at 1 (Am. Compl. ¶ 1). Plaintiff performs maintenance, repair, and overhaul services on aircraft parts. *Id.* Defendant is a California corporation with its principal place of business in California. *Id.* (Am. Compl. ¶ 2). Defendant sells Gulfstream aircraft parts. *Id.*

The parties' course of dealing with one another spans eight years. *Id.* at 1–2 (Am. Compl. ¶ 4). Defendant shipped landing gear components to plaintiff in Kansas for overhaul and repair. *Id.* Plaintiff performed tear down and evaluation of those landing gear components. *Id.* at 2 (Am. Compl. ¶ 6). When defendant received an order, plaintiff completed the landing gear's overhaul, refurbishing and repairing certain parts of the components. *Id.* Plaintiff worked on the parts at its Kansas facility, then shipped completed parts and components directly to defendant's customers. *Id.* Defendant agreed to postpone receiving invoices for plaintiff's services until

defendant had received a customer order for the overhauled landing gear or parts. *Id.* Once that occurred, plaintiff provided defendant with a final invoice billing for the services it had performed. *Id.*

Plaintiff alleges that defendant recently breached and repudiated the parties' agreement. *Id.* According to plaintiff, defendant allegedly demanded plaintiff to ship landing gear "as is" without complete overhaul. *Id.* Plaintiff alleges that defendant's breach has caused it to sustain damages of $767,459.64. *Id.* at 3 (Am. Compl. ¶ 7).

Before plaintiff filed this action in Kansas, defendant had sued plaintiff in the United States District Court for the Central District of California. *Id.* at 2 (Am. Compl. ¶ 6). In that California case, defendant here—plaintiff in California—had asked the California court to order plaintiff to return the landing gear parts without payment. *Id.* In this Kansas action, plaintiff asserts a claim for breach of contract or, alternatively, seeks to recover on a quantum meruit claim. Doc. 5 at 3 (Am. Compl. ¶¶ 7–8).

Defendant has filed a Motion to Dismiss, Transfer, or Stay. Doc. 8. Invoking the first-to-file rule, defendant asks the court to dismiss, transfer, or stay this action because it filed the pending lawsuit in the Central District of California before plaintiff filed this Kansas suit. The first-to-file rule aims to avoid piecemeal litigation. Doc. 9 at 1. The next section recites the legal standard governing that rule.

## II. Legal Standard

Defendant asks the court to decline jurisdiction over this action based on the "first-to-file" rule. Our Circuit has explained that rule this way:

> Federal courts have recognized that, as courts of coordinate jurisdiction and equal rank, they must be careful to avoid interfering with each other's affairs in order "to avoid the waste of duplication, to avoid rulings which may trench upon the

3

authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result."

*Buzas Baseball, Inc. v. Bd. of Regents of Univ. Sys. of Ga.*, No. 98-4098, 1999 WL 682883, at *2 (10th Cir. Sept. 2, 1999) (quoting *Sutter Corp. v. P & P Indus., Inc.*, 125 F.3d 914, 917 (5th Cir. 1997)). The "'first-to-file' rule permits a district court to decline jurisdiction where a complaint raising the same issues against the same parties has previously been filed in another district court." *Id.* (citing *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 625 (9th Cir. 1991)).

"When determining whether to apply the first-to-file rule, courts examine the following factors: (1) the chronology of the actions; (2) the similarity of the parties involved; and (3) the similarity of the issues at stake." *Masciotra v. Vertafore, Inc.*, No. 20-cv-3603-WJM-NYW, 2021 WL 1720860, at *2 (D. Colo. Apr. 30, 2021) (citing *Brannon v. Express Scripts Holding Co.*, No. 17-2497-DDC-TJJ, 2018 WL 263237, at *3 (D. Kan. Jan. 2, 2018)). Like many rules, the first-to-file rule has exceptions. But they are few in number. "A court should depart from the first-to-file doctrine only in extraordinary circumstances involving inequitable conduct, bad faith, anticipatory suits or forum shopping." *Hubbard v. Argent Mortg. Co., LLC*, No. 15-CV-02375-WJM-CBS, 2016 WL 4537869, at *5 (D. Colo. Aug. 31, 2016) (quotation cleaned up).

### III. Analysis

Below, the court explains why the first-to-file rule applies here and warrants transferring this action to the Central District of California. As part of this analysis, the court addresses the purported forum selection clause and, specifically, whether it's a sufficient reason to deny defendant's motion to transfer.

#### A. The First-to-File Rule

The first-to-file rule applies to "courts of coordinate jurisdiction[.]" *Buzas Baseball, Inc.*, 1999 WL 682883, at *2. The Tenth Circuit has instructed "that the court which first obtains

jurisdiction should be allowed to first decide issues of venue." *Hospah Coal Co. v. Chaco Energy Co.*, 673 F.2d 1161, 1164 (10th Cir. 1982). When applying this principle, the courts apply three factors.

*Factor one* turns on the chronology. Here, there's no dispute. Defendant filed the Central District of California case first on November 11, 2021, and plaintiff filed this Kansas case later on January 6, 2022. *Compare* Doc. 14-1 at 33,[2] *with* Doc. 1; *see also* Doc. 5 at 2 (Am. Compl. ¶ 6) ("Defendant has in fact filed suit against plaintiff in the Central District of California seeking an order from that court obligating the plaintiff to return defendant's parts without payment for plaintiff's services."). *Factor two* turns on the degree of similarity of the parties in the two cases. Here, the parties in the two actions are exactly the same. *Id.* This leaves the *third factor*, which asks about "the similarity of the issues at stake." *Masciotra*, 2021 WL 1720860, at *2; *see also ACU Dev., LLC v. Mod. Point, LLC*, No. 19-CV-01063-MEH, 2019 WL 4751710, at *2 (D. Colo. Sept. 30, 2019) ("District courts applying the first-to-file rule within the Tenth Circuit have suggested the proper course is for the second-filed court to make the initial determination of whether the two actions substantially overlap." (first citing *Hubbard v. Argent Mortg. Co., LLC*, No. 15-cv-02375-WJM-CBS, 2016 WL 4537869, at *5 (D. Colo. Aug. 31, 2016); then citing *Crocs, Inc. v. Cheng's Enters., Inc.*, No. 06-cv-00605-PAB-KMT, 2015 WL 5547389, at *3 (D. Colo. Sept. 21, 2015))). To favor transfer, this third factor doesn't require that the two cases present precisely the same claims and defenses. Instead, "for the first-to-file rule to apply, the issues and parties need only be 'substantially similar.'" *Layne Christensen Co.*

---

[2] The court properly may take judicial notice of the filings in the Central District of California case. *St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir. 1979) (holding that federal courts may take notice of proceedings in other courts if those proceedings relate directly to matters at issue in the current case).

*v. Levelland/Hockley Cnty. Ethanol, LLC*, No. 08-2203-CM, 2009 WL 352832, at *2 (D. Kan. Feb. 12, 2009).

Plaintiff argues that the issues in the two cases aren't similar. Plaintiff asserts that the "core issue in the California case is whether [defendant] is entitled to the return of its property in [plaintiff's] possession." Doc. 14 at 3. Plaintiff also asserts that the "core issue in the Kansas case," in contrast, "is whether [plaintiff] is entitled to recover under breach of contract and quantum meruit theories for work performed on [defendant's] property." *Id.* According to plaintiff, the two actions involve different airplane parts. *Id.* at 4. Plaintiff also argues that the two actions don't seek the same relief—specifically, the California action requests equitable relief. *Id.* Defendant strives to neutralize plaintiff's arguments, contending that plaintiff's Complaint essentially concedes that the two actions involve the same issues. Indeed, the Amended Complaint provides:

> Recently, defendant breached and repudiated the parties' agreement by demanding that plaintiff ship the landing gear parts and components "as-is" without the complete overhaul service. Defendant has in fact filed suit against plaintiff in the Central District of California seeking an order from that court obligating the plaintiff to return defendant's parts without payments for plaintiff's services.

Doc. 5 at 2 (Am. Compl. ¶ 6).

Defendant has the better of the argument because the Complaint itself undercuts plaintiff's argument that the two cases involve dissimilar issues. It explicitly contends that plaintiff's services-rendered claim is directly tied to return of the parts sought by defendant in the California suit. *See* Doc. 5 at 2 (Am. Compl. ¶ 6) (contending that defendant needs to pay for plaintiff's services before acquiring the parts it seeks.) Also, the court projects, the two cases will rely on substantially the same evidence. Both actions arise from the same underlying facts and involve the same core issue: Whether defendant owes plaintiff compensation for its work on

aircraft parts that plaintiff possesses. The Central District of California recently held that it properly has acquired personal jurisdiction over plaintiff in the case filed there. Doc. 17-1 at 14. The claim plaintiff brings in this action, which follows and references the initial claim asserted in the California case, effectively functions as a Counterclaim to defendant's California suit. *See* Doc. 5 at 2 (Am. Compl. ¶ 6).

Finally, the court recognizes, plaintiff could displace the first-to-file rule if it could adduce evidence of "inequitable conduct, bad faith, anticipatory suit[,] or forum shopping." *Hubbard*, 2016 WL 4537869, at *5. But plaintiff hasn't come forward with any such evidence.

In sum, defendant has carried its burden to show that all three factors favor applying the first-to-file rule here. Undeterred, plaintiff moves to a second-level argument. It theorizes that the parties have agreed—as part of their contractual bargain—to litigate any disputes in Sedgwick County, Kansas. So, plaintiff reasons, this agreement supplants the outcome otherwise produced by the first-to-file rule. Part B, below, takes up this argument.

  **B.**   **Forum Selection Clause**

According to plaintiff, the parties' agreement includes a forum selection clause that declares a state or federal court in Sedgwick County, Kansas, as the "sole and exclusive venue for any actions arising from or relating to purchase and sale of a Product[.]" Doc. 14-2 at 11. And binding precedent requires federal courts to give valid forum selection claims "controlling weight in all but the most exceptional cases." *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 63 (2013) (quotation cleaned up). But the word "valid" in *Atl. Marine*'s test is an important qualifier. Our court, other courts, and respected commentators recognize that disputes over such claims can nullify the effect of these provisions. *See Nuvio Corp. v. LogiSense Corp.*, No. 08-2507-CM, 2008 WL 5192122, *2 (D. Kan. Dec. 11, 2008)

(declining to transfer based on a forum selection clause because parties disputed validity of the contract containing the clause); *U.S. ex rel. Tesar Indus. Contractors, Inc. v. Turner Constr. Co.*, No. 1:09-cv-1477, 2009 WL 3626696, *6 (N.D. Ohio Oct. 29, 2009) ("[C]ourts give little if any weight to a forum selection clause whose applicability is disputed." (citations omitted)); 15 Richard D. Freer, Federal Practice and Procedure § 3854.1 (4th ed. 2022).

      Here, to put it mildly, there's good reason to doubt whether the forum selection clause even is part of the parties' contract. Plaintiff's argument relies on a set of "Terms and Conditions" posted on plaintiff's company website. Doc. 14 at 7–11. And though the record contains some price quotes and invoices referencing online terms and conditions, other price quotes in the record contain no such reference. Doc. 9-1 at 10–11 (Charles Decl. Ex. 2). And yet other of plaintiff's price quotes include a link to a page on plaintiff's company website that doesn't include any terms and conditions. *Id.* at 15–16 (Charles Decl. Ex. 3). Even on its best day, plaintiff's argument contends that the link leading to the terms and conditions—and thus to the Kansas forum selection clause—"worked from 2013 through August, 2017." Doc. 14-5 at 4 (Krotec Decl. ¶ 8). But the problem with this argument is that the only price quotes in the current record bear dates from 2019 and 2021. *See* Doc. 9-1 at 12–14 (Charles Decl. Ex. 2). These dates don't align with the period that plaintiff claims the link was operational.

      This uncertainty exposes another consequential uncertainty—a disagreement whether Kansas or California law governs the substantive contract disputes. *Compare* Doc. 14 at 7–11 (capturing plaintiff's argument that Kansas law applies to the contract), *with* Doc. 9 at 6–7 (summarizing defendant's argument why California law applies). A court will have to unravel this dispute by applying Kansas choice of law principles. A federal court using its diversity jurisdiction—as the court does here—must apply the choice of law rules of the state where the

court is located. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Kansas choice of law rules divide contract claims into two categories. They are: (1) disputes that go "to the substance of the obligation[;]" and (2) questions that go "to the manner and method of performance . . . ." *Moses v. Halstead*, 581 F.3d 1248, 1252 (10th Cir. 2009) (applying Kansas choice of law rules); *see also Cent. Power Sys. & Servs., Inc. v. Universal Underwriters Ins. Co.*, 319 P.3d 562, 566 (Kan. Ct. App. 2014) (same). For the former—disputes about the substance of a contractual obligation—"the primary rule contained in Section 332" of the First Restatement applies. *Moses*, 581 F.3d at 1252 (citing Restatement (First) of Conflict of Laws § 332 (Am. L. Inst. 1934)). This primary rule applies the *lex loci contractus* doctrine, *i.e.*, "the law of the state where the contract is made governs." *Id.* For the second category—questions going to the manner and method of performance—"the law of the place of performance applies." *Id.* (citing Restatement (First) § 358 (further citation omitted)).

As our Circuit has recognized, the Kansas cases "have struggled in determining whether questions raised in cases before [the Kansas courts] are governed by the law of the place of performance or the place where the contract was made." *Id.* This struggle manifests a difficulty recognized by the Restatement itself:

> [T]here is no logical line which separates questions of the obligation of the contract, which is determined by the law of the place of contracting, from questions of performance, determined by the law of the place of performance. There is, however, a practical line which is drawn in every case by the particular circumstances thereof. When the application of the law of the place of contracting would extend to the determination of the minute details of the manner, method, time and sufficiency of performance so that it would be an unreasonable regulation of acts in the place of performance, the law of the place of contracting will cease to control and the law of the place of performance will be applied. On the other hand, *when the application of the law of the place of performance would extend to a regulation of the substance of the obligation to which the parties purported to bind themselves so that it would unreasonably determine the effect of an agreement made in the place of contracting, the law of the place of performance will give way to the law of the place of contracting.*

9

Restatement (First) of Conflict of Laws § 358 cmt. b (1934) (emphasis added by the Circuit in *Moses*, 581 F.3d at 1252).  *See also* Restatement (First) § 332 cmt. c.  The struggle recognized by our Circuit will play out in this case in an especially confusing context.  That's so because the parties disagree so significantly about when the contract was formed, where it was formed, and what performance obligations it imposed on each party.

Defendant's version of the contract goes something like this:  Defendant initiated a contract by sending a purchase order for parts to plaintiff.  Plaintiff then would submit a work order price quote to defendant.  Then, defendant accepted the work order quote by signing and returning it to plaintiff.  Plaintiff, once finished with its refurbishment work, issued a final invoice to defendant.  *See* Doc. 9-1 at 2, 3, 5–9 (Charles Decl. ¶¶ 6, 7, 9, 12–13 & Ex. 1).  From these allegations, defendant concludes that California law applies because the contract was formed when defendant signed plaintiff's work order in the Golden State.  *See* Doc. 9 at 7.

Plaintiff sees it quite differently.  It claims that the parties formed a "business relationship" with one another during a meeting in Nevada in 2013.  Plaintiff also asserts that this 2013 oral contract "was confirmed by writings over the years in the form of invoices and payments [delivered] in their ordinary course of dealing." Doc. 14 at 14.  This version of the contract leads plaintiff to conclude that Kansas law applies, though it never explains why.

Taken together, the court doesn't view this case as one where an unambiguous contract contains an unequivocal forum selection clause.  Instead, on the record to date, several substantial disputes inhere within the parties' claims, *i.e.*, when the contract was formed, where it was formed, which state's laws govern these contract formation and performance issues, and whether the parties' contract includes a valid forum selection clause.  Part C, below, discusses the court's options to deal with this daunting set of problems.

### C. What To Do?

The court sees two options. On one hand, it could use case management tools and decide the threshold issue—does a forum selection clause nullify the result dictated by the first-to-file rule? This approach likely would require close case management and early motion practice to decide the challenging issues outlined in Part B, above. On the other hand, and alternatively, the court could transfer this case to the first-filed district in the Central District of California. That court could manage these issues (and any others presented by the Complaint at issue there) and decide whether a valid forum selection clause was part of the parties' contractual bargain with one another. If that process leads the court to rule that the contract validly selects Kansas as the parties' chosen forum, the California court could transfer the case (or both of them) to this judicial district. Four reasons lead the court to conclude that the latter alternative is the better choice.

*First*, it complies with the first-to-file rule. Unless a forum selection clause changes things, there's no reason to doubt that this rule calls for transfer to the California court.

*Second*, that approach honors the values supporting the first-to-file rule. As our Circuit has recognized, federal courts, "as courts of coordinate jurisdiction and equal rank," must "avoid interfering with each other's affairs[.]" *Buzas Baseball*, 1999 WL 682883, at *2. This approach ensures, as the Fifth Circuit explained, that the federal courts will "avoid the waste of duplication, . . . avoid rulings which may trench upon the authority of sister courts," and eliminate "piecemeal resolution of issues that call for a uniform result." *Sutter Corp.*, 125 F.3d at 917 (quoted by Tenth Circuit approvingly in *Buzas Baseball*). No good reason justifies two cases in two distant districts covering the same ground twice.

*Third*, transferring the case comports with the better approach used in similar controversies.  *See, e.g.*, *Enhancedcare, Inc. v. Attentive Health & Wellness, LLC*, No. 20-CV-6171-FPG, 2021 WL 388763, at *7 (W.D.N.Y. Feb. 4, 2021) (collecting cases); *see also U.S. Sec. Holdings, Inc. v. Andrews*, No. 1:19-CV-8025 (CM), 2021 WL 796687, at *10–11 (S.D.N.Y. Mar. 2, 2021) (declining deference to forum selection clause where "it makes no sense" to do so); *Comcast Corp. v. Rovi Corp.*, No. 16-CV-3852 (JPO), 2016 WL 4991625, at *3–4 (S.D.N.Y. Sept. 16, 2016) (rejecting contention that "forum-selection clauses trump the first-to-file rule" and staying second-filed case while first-filed forum decided parties' venue motions).

*Last*, transferring this case to California—instead of dismissing it—best maintains flexibility for future case management.  If the California case later decides that the venue selection clause is part of the contract and it encompasses the disputes at issue, it can re-transfer this case (and, if appropriate, the California case as well) to our judicial district.  In contrast, dismissal might foreclose that option (or, at best, complicate it).

### IV. Conclusion

Based on the first-to-file rule, the court concludes that a transfer of venue to the United States District Court for the Central District of California is appropriate under 28 U.S.C. § 1404.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's Motion to Dismiss, Transfer, or Stay (Doc. 8) is granted in part and denied in part.

**IT IS FURTHER ORDERED BY THE COURT THAT** the Clerk is directed to take all appropriate steps necessary to transfer this action to the United States District Court for the Central District of California.

**IT IS SO ORDERED.**

**Dated this 26th day of September, 2022, at Kansas City, Kansas.**

<u>s/ Daniel D. Crabtree</u>
**Daniel D. Crabtree**
**United States District Judge**
